**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RENEE E. HALTIE,** | : | |
| **Plaintiff,** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **CAROLYN W. COLVIN,** | : | **No. 13-7166** |
| *Acting Commissioner of Social Security*, | : | |
| **Defendant.** | : | |

## MEMORANDUM

PRATTER, J.                                                                                        JULY 7, 2015

Renee Haltie brings this action pursuant to 42 U.S.C. § 1383(c)(3), which incorporates by reference 42 U.S.C. § 405(g), seeking review of the final determination of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB") and supplemental security income ("SSI"). After independent consideration of the Administrative Record, submitted pleadings, U.S. Magistrate Judge Thomas J. Rueter's Report and Recommendation, Ms. Haltie's Objections thereto, and the Commissioner's Response to the Objections, the Court declines to adopt the Report and Recommendation. Although the Court cannot conclude that Ms. Haltie is disabled within the meaning of the Social Security Act, the Court likewise cannot conclude that there was substantial evidence for the Administrative Law Judge's determination that Ms. Haltie is not disabled. In particular, the Court is unable to conclude that substantial evidence supports the Administrative Law Judge's discrediting of the medical opinions from two examining sources and discrediting of Ms. Haltie's testimony. Accordingly, the Court grants in part and denies in part Ms. Haltie's Request for Review and will remand the case to the Commissioner for further proceedings consistent with this opinion.

I.    BACKGROUND

Ms. Haltie alleges that she has been disabled since January 1, 2011, as a result of back pain. Ms. Haltie's claim for benefits was initially denied by the Social Security Administration, and she then requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held before the ALJ on June 26, 2012. The ALJ heard testimony from Ms. Haltie and from a vocational expert.

Ms. Haltie was 61 years old at the time of the hearing before the ALJ. She has a high school education and has worked as a commercial cleaner and as a cashier. She worked as recently as January 2010 as a part-time supermarket cashier and clerk. She left her job at the supermarket because, according to her testimony at the hearing, the supermarket would not accommodate her need to sit every fifteen minutes or her difficulty lifting items such as cases of water or soda. She did seek full time employment following the end of her employment with the supermarket but was not offered any positions. She testified that she was browsing for cashier positions where she could sit down throughout her shift and not lift heavy items like she had as a supermarket clerk.

Ms. Haltie testified that she has good days and bad days and takes pain medicine as needed for her back. However, even if she takes the pain medicine for her back, lifting items heavier than five pounds nonetheless will cause her pain. Also, the medicine causes occasional side effects such as dizziness, sleepiness, and dry mouth. On Ms. Haltie's bad days, which she has three or four times a week, she "can't even get out of bed." R. 54. She testified that she performed household chores such as cooking, washing dishes, occasionally making her bed, dusting, and sweeping. She also likes to watch cooking shows on television, read, and garden,

although she can only garden "a little bit." R. 46. She does not shop, do laundry, or take out the trash—her daughters help with these and other household chores.

The ALJ reached a decision denying Ms. Haltie's claim for disability benefits on August 17, 2012. Specifically, the ALJ found that Ms. Haltie was limited to medium work[1] and therefore could perform her past relevant work. The Appeals Council denied review of that decision on October 23, 2013. Ms. Haltie then sought judicial review of the ALJ's decision pursuant 42 U.S.C. § 405(g). The case was referred to Magistrate Judge Rueter for a Report and Recommendation. Magistrate Judge Rueter recommended denying Ms. Haltie's request for review. Ms. Haltie objected to that recommendation.

## II.   STANDARD OF REVIEW

When a party makes a timely and specific objection to a portion of a Report and Recommendation, the district court applies a *de novo* review to the issues raised on objection. 28 U.S.C. § 636(b)(1); *United States v. Raddatz*, 447 U.S. 667, 674-75 (1980). The court may accept, reject, or modify, in whole or in part, the findings or recommendations of the magistrate judge. *Id.*

However, the district court may review the ALJ's final decision only in order to determine "whether that decision is supported by substantial evidence." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citing 42 U.S.C. § 405(g)). Stated differently, the court "is bound

---

[1] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." C.F.R. § 404.1567(c). Social Security Ruling 83-10 further describes medium work: "A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds. . . . The considerable lifting required for the full range of medium work usually requires frequent bending-stooping (Stooping is a type of bending in which a person bends his or her body downward and forward by bending the spine at the waist.) Flexibility of the knees as well as the torso is important for this activity. . . . In most medium jobs, being on one's feet for most of the workday is critical."

by the ALJ's findings of fact if they are supported by substantial evidence on the record." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999). "Substantial evidence 'does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hartranft*, 181 F.3d at 360 (quoting *Pierce v. Underwood*, 487 U.S. 552 (1988)). The court may not "weigh the evidence," *Williams v. Sullivan*, 970 F.2d 1178, 1183 (3d Cir. 1992), and "will not set the Commissioner's decision aside if it is supported by substantial evidence, even if [the court] would have decided the factual inquiry differently," *Hartranft*, 181 F.3d at 360.

An ALJ's decision must present sufficient explanation of the final determination to provide a reviewing court with the benefit of the factual basis underlying the ultimate disability finding. *Cotter v. Harris*, 642 F.2d 700, 704-05 (3d Cir. 1981) (citing *S.E.C. v. Chenery Corp.*, 318 U.S. 80, 94 (1943)). While the ALJ need only discuss the most pertinent, relevant evidence bearing upon a claimant's disability status, the ALJ must provide sufficient discussion to allow the court to determine whether any rejection of potentially significant, probative evidence was proper. *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 203-04 (3d Cir. 2008) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000); *Cotter*, 642 F.2d at 706).

A claimant bears the burden to show disability because he or she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Under the regulations implementing the Act, the Commissioner uses a five-step sequential process to determine whether a person is "disabled."[2] The claimant satisfies the burden of proving disability

---

[2] This process requires the Commissioner to consider, in sequence, whether a claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment or severe combination

4

by showing an inability to return to his past relevant work. *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005). Once the claimant makes this showing, the burden shifts to the Commissioner to show that, given the claimant's age, education, and work experience, the claimant has the ability to perform specific jobs existing in the economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *see Rutherford*, 399 F.3d at 551.

## III.   DISCUSSION

Ms. Haltie raises several objections to the Report and Recommendation. These objections fall into two general categories: (1) the ALJ failed to adequately weigh the opinion testimony of the medical experts; and (2) the ALJ failed to adequately consider the testimony of Ms. Haltie. The Court agrees with Ms. Haltie on both accounts, as discussed below.

### A.  The ALJ's Weighing of the Expert Opinions

When considering medical opinion evidence, the ALJ must follow the framework set forth in the Social Security Regulations. The ALJ "must consider all the evidence and give some reason for discounting the evidence she rejects." *Plummer*, 186 F.3d at 429. "When a conflict in the evidence exists, the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason." *Id.* (quotation marks and citation omitted). A medical opinion from a treating source must be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(c)(2). If the treating source's medical opinion is not given controlling weight, the opinion is weighed using the same factors as opinions from non-treating sources; those factors are (1) the length of treatment and frequency of

---

of impairments; (3) has an impairment that meets or medically equals the requirements of a listed impairment; (4) has a residual functional capacity to perform the claimant's past relevant work; and (5) if not, whether the claimant is able to perform other work, in view of his age, education, and work experience. 20 C.F.R. § 416.920.

examination; (2) the nature and extent of the treatment relationship; (3) the opinion's support by medical evidence; (4) the opinion's consistency with the record as a whole; (5) the treating physician's specialization; and (6) any other factor tending to support or contradict the opinion. 20 C.F.R. § 416.927(c). In weighing the medical evidence, "an ALJ may not make speculative inferences from medical reports," or "employ her own expertise against that of a physician who presents competent medical evidence." *Plummer*, 186 F.3d at 429.

Ms. Haltie argues that the ALJ improperly analyzed the opinions of Ms. Haltie's treating physician, Dr. Gary Salzman, D.O., the Commissioner's consultative examiner, Emil Sfedu, M.D., and the non-examining state agency physician, Carla Huitt, M.D. The ALJ rejected the opinion of Dr. Salzman as "unconvincing," and did not rely on the opinion of Dr. Sfedu. Instead, the ALJ agreed with the assessment of Dr. Huitt. For the reasons discussed below, the Court finds that the ALJ's assessment of these opinions was inadequate.

### 1. Dr. Salzman

The ALJ rejected the testimony of Ms. Haltie's treating physician, Dr. Salzman. The ALJ reasoned:

> Significantly, Dr. Salzman has offered almost no statement of reasons in support of his opinions; in most instances, he has only checked boxes on a form and cited the claimant's impairments; most recently, he also has referred to a finding of reduced lumbar range of motion that does not appear in his treatment notes since the alleged onset date and which in itself would not preclude all work. His treatment notes also reflect only the claimant's complaints with no abnormal examination findings, much less results indicating a disabling medical condition. Further, Dr. Salzman in some instances offered his opinions only on a Public Welfare form, which he must fill out so that he can receive reimbursement for services and the claimant can continue receiving public assistance. Thus, his opinions might reflect those considerations. The record also does not indicate that Dr. Salzman has any special training or expertise in assessing ability to work or that he knows and understands the Agency's definition of disability. Moreover, the claimant's testimony that she has been seeking full-time light and medium work, would accept any such work, reads books for hours and watches television all day, appears to contradict Dr. Salzman's opinions. Finally, statements that a

claimant is disabled are not medical opinions; rather, such issues are reserved to the Commissioner. I therefore do not rely on these unsupported opinions.

R. 26.

The ALJ's treatment of Dr. Salzman's medical opinion is flawed in several respects. While the ALJ is correct that "[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best," *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993), the evidentiary record supporting Dr. Salzman's opinion was more robust than merely a form report. Dr. Salzman's treatment notes for Ms. Haltie include more than Ms. Haltie's subjective complaints but also numerous diagnostic findings over the course of her treatment, including a finding in February 2012 of a limited range of motion of her hip, R. 277, and a positive finding as to a condition of her sacrum, R. 279. Moreover, the Medical Source Statement from May 2012 diagnoses Ms. Haltie with a lumbar spine herniated disk, consistent with the findings of an MRI taken in December 2007 of Ms. Haltie's spine, and includes clinical findings of decreased range of motion in her lumbar spine, and tenderness upon palpation of parts of her back. R. 270. It is not correct, therefore, that Dr. Salzman has made "no abnormal examination findings" as to Ms. Haltie since her alleged onset date.[3] The ALJ mentioned the findings recorded in the Medical Source Statement only in passing, and he did not analyze them. Rather, he apparently cynically disregarded those findings upon the belief that Dr. Salzman's Medical Source Statement reflected Dr. Salzman's self-interested desire to be reimbursed for his services. This inference of bias was based on nothing more than speculation and is not an

---

[3] The ALJ also stated that "the record since the alleged onset date includes no *relevant* abnormal clinical results." R. 24 (emphasis added). The qualifying word "relevant" does not remedy the ALJ's erroneous proposition. The ALJ lists as an absent relevant abnormal results "reduced lumbar range of motion." R. 24. Yet Dr. Salzman made a finding in May 2012 of "decreased ROM in lumbar spine." R. 270. The ALJ acknowledges this, but apparently disregards it as a reflection of Dr. Salzman's bias in completing the Medical Source Statement. *See* R. 26.

appropriate reason for disregarding the findings of Dr. Salzman. *See Plummer*, 186 F.3d at 429 ("[A]n ALJ may not make speculative inferences from medical reports.").

Even if the ALJ was correct in not assigning controlling weight to Dr. Salzman's opinions, the ALJ erred in not properly considering the factors for weighing the medical opinions of Dr. Salzman. At no point does the ALJ discuss the length of treatment and frequency of examination by Dr. Salzman or the nature and extent of the treatment relationship. Dr. Salzman had been treating Ms. Haltie's back condition and back pain every month since May 2010 and had been prescribing medication for her condition, and the treatment notes reflect an ongoing effort to relieve Ms. Haltie of her back, hip, groin, and leg pain. The ALJ also does not appear to properly analyze the opinion's consistency with the record as a whole. The ALJ posits that Dr. Salzman's opinion is inconsistent with Ms. Haltie's testimony that she had been seeking full-time "light and medium work, would accept any such work, reads books for hours, and watches television all day," but the Court does not see how this is so. Ms. Haltie did not testify that she was seeking full-time *medium* work, but rather that she had been looking for maintenance or cashier work. *See* R. 54. There was some confusion as to what time period the ALJ's questions during the hearing were referring to, but Ms. Haltie did testify that even though, at some point in the prior two years, she would have accepted a job in maintenance if offered, she would have "let them know I can't do like I used to." R. 43. She later clarified that she had been browsing for jobs where she could sit and not have to lift the heavy objects (e.g. cases of soda or water (R. 61)) that she had been unable to lift in her previous job as a cashier at the grocery store. R. 62. She also testified that, as of the time of the hearing, she would not have been able to appear for work five days a week even for a job where she could sit and not have to lift heavy items. R. 62. Ms. Haltie was unable to find any such job. The ALJ also does not adequately explain how Ms.

Haltie's ability to read books for hours or watch television all day is inconsistent with Dr. Salzman's opinions. Unless Ms. Haltie favors books weighing more than ten pounds, the Court fails to see how these activities of minimal exertion discount the credibility of Dr. Salzman's opinions about Ms. Haltie's limitations of movement and strength. *Cf. Smith v. Califano*, 637 F.2d 968, 971 (3d Cir. 1981) ("Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity.").[4] To the extent the ALJ concluded otherwise, a more complete explanation of the lack of consistency between Dr. Salzman's opinions and the evidence in the record was needed.[5]

Because the ALJ improperly rejected the opinions of Dr. Salzman without properly considering the factors necessary in determining the proper weight his opinions warranted, remand is necessary.

### 2. Dr. Sfedu

The ALJ likewise rejected as unsupported the opinion of Dr. Sfedu, the Commissioner's examining medical expert. The ALJ reasoned:

> After a consultative examination in April, 2011, Dr. Emil Sfedu offered an opinion that the claimant could lift 25 pounds but could stand and walk only one to two hours per day, could perform postural activities only occasionally and had a limitation in working at heights (Exhibit 2F). All examination results at that time, however, were normal. In fact, the record does not contain any abnormal examination findings since the alleged onset day. Thus Dr. Sfedu's opinion finds no objective support either in his own examination or in the record as a whole since the alleged onset date. I therefore do not rely on this unsupported opinion.

R. 25-26.

---

[4] In many locales, reading is to be applauded rather than criticized.

[5] Additionally, the ALJ did not appear to consider any specialization (or lack thereof) of Dr. Salzman before assigning no weight to Dr. Salzman's opinions. The ALJ did note that Dr. Salzman was not an expert in the intricacies of the Social Security Administration's definition of disability, but the ALJ does not account for whether Dr. Salzman specialized in any particular type of medicine.

This analysis of Dr. Sfedu's opinion fails to mention that Dr. Sfedu had examined the results of an April 2011 x-ray of Ms. Haltie's spine and concluded that Ms. Haltie suffered from "[e]arly spondilosis [*sic*]" and "[e]arly degenerative disk disease L5-S1." R. 246. If this examination result is "normal" the ALJ must explain how so. Without further explanation, the Court cannot determine if the ALJ's rejection of Dr. Sfedu's testimony is supported by substantial evidence. Earlier in his opinion, the ALJ does acknowledge the results of the April 2011 x-ray, noting that "the record does not contain any other diagnostic test of the lumbar spine except x-rays showing early degeneration at L5-S1 in April, 2011." R. 24. However, the ALJ never explains how the results of the x-ray support (or fail to support) the findings of Drs. Sfedu and Salzman. Instead, the ALJ appears to reject the findings as too insignificant to result in any of the limitations found by Drs. Sfedu and Salzman. The ALJ also repeats his assertion that there were no abnormal findings after the alleged onset date without accounting for the findings of Dr. Salzman or the x-ray. Perhaps the early degenerative disk disease identified in the x-ray is incapable of causing the symptoms alleged by Ms. Haltie, but that is a medical proposition, not a legal one. By "employ[ing] h[is] own expertise against that of a physician who presents competent medical evidence," the ALJ erred. *Plummer*, 186 F.3d at 429.

### 3. Dr. Huitt

Instead of crediting the opinions of Drs. Salzman and Sfedu, who had examined Ms. Haltie, the ALJ instead credited the opinions of Dr. Huitt, the non-examining state physician. Dr. Huitt concluded that Ms. Haltie could perform medium work, which is to say that she could lift up to 50 pounds occasionally and frequently lift 25 pounds. The ALJ agreed with this assessment, finding that "[f]or the reasons set forth elsewhere in this opinion, that was a reasonable then [*sic*] and remains reasonable now." R. 25. But the Court is at a loss trying to

locate where in the ALJ's opinion one can find the justification for the finding that Dr. Huitt's results were reasonable. The ALJ does not specifically discuss the factors found in 20 C.F.R. § 416.927(c) when assigning weight to Dr. Huitt's results. A discussion of "the opinion's support by medical evidence" or "the opinion's consistency with the record as a whole" might well have included a discussion of the evidence in the record that Dr. Huitt did not review when reaching her conclusion. Such evidence includes Dr. Salzman's treatment notes and medical source statements, which, as mentioned previously, include findings as to limited range of motion of the lumbar spine and hip. Moreover, Dr. Huitt did not review an MRI of Ms. Haltie's spine from 2007 or the notes from Dr. Nunez from 2007 and 2008 relating to nerve conduction and EMG studies. This is not to suggest that the failure to consider these records made Dr. Huitt's opinion worthless—perhaps Dr. Huitt's opinions still deserved meaningful weight. But the ALJ should have more thoroughly analyzed the factors set forth 20 C.F.R. § 416.927(c), including "the degree to which [the] opinions consider all of the pertinent evidence in [the] claim, including opinions of treating and other examining sources." 20 C.F.R. § 404.1527. Moreover, the Court does not know why the ALJ found Dr. Huitt's analysis reasonable. Did the ALJ find Dr. Huitt's conclusion that Ms. Haltie could regularly lift 25 pounds and occasionally lift 50 pounds to be well-supported by diagnostic findings? If so, which findings support Dr. Huitt's conclusion? The Court cannot answer these questions and therefore cannot conclude that the ALJ's decision to assign great weight to Dr. Huitt's analysis was supported by substantial evidence.

### B.  The ALJ's Consideration of Ms. Haltie's Testimony

Ms. Haltie also objects the ALJ's treatment of her testimony in his opinion. The ALJ's credibility determinations as to Ms. Haltie largely turn on the flawed analyses of the medical opinion evidence. For example, in deeming Ms. Haltie's testimony not credible, the ALJ repeats

the erroneous statement that "all spinal examination results since the alleged onset date have been normal." R. 25. To the extent the ALJ relied on his flawed analysis of the medical evidence in deeming Ms. Haltie's testimony less credible, the ALJ's decision must be revisited.

Moreover, the ALJ erred in failing to carefully appraise Ms. Haltie's statements as to which past work requirements she could no longer perform. The Third Circuit Court of Appeals has adopted Social Security Ruling 82-62, which states that "[d]etermination of the claimant's ability to do [past relevant work] requires a careful appraisal of (1) the *individual's statements* as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements." *Burnett*, 220 F.3d at 123 (quoting S.S.R. 82–62) (emphasis and alterations original to *Burnett* opinion). Here, the ALJ relied heavily upon the fact that Ms. Haltie was seeking full-time work in maintenance and as a cashier. The ALJ found that this fact undermined Ms. Haltie's credibility as well as the findings of the Drs. Salzman and Sfedu that Ms. Haltie could not perform her past relevant work. However, the ALJ did not discuss Ms. Haltie's testimony that she could no longer perform the lifting and standing that her previous work required. Nor did the ALJ discuss the portion of Ms. Haltie's testimony in which she clarified that in her job searches she was looking for work that would accommodate the limitations she was alleging, or the portion in which Ms. Haltie testified that, as of the onset date, she would not have been able to perform even a cashier job where she could sit throughout her shift and not lift heavy items. The ALJ's failure to discuss this testimony makes it impossible for the Court to determine whether the ALJ carefully appraised Ms. Haltie's statements as to which past work requirements she could not meet. *Cf. Id.* at 121 ("Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence. In the absence of such an indication, the reviewing court

cannot tell if significant probative evidence was not credited or simply ignored. (quotation marks and citations omitted)). Remand for a more careful appraisal of Ms. Haltie's testimony is therefore necessary.

IV.   CONCLUSION

For the foregoing reasons, the Court declines to adopt the Report and Recommendation and will remand the case for further consideration by the Commissioner. An appropriate Order follows.

BY THE COURT:

<u>S/Gene E.K. Pratter</u>
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE